UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMANTHA LEE ALVERNAZ,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | No. 2:13-cv-0158 AC<br><br><br><br>ORDER |

Plaintiff, proceeding pro se, seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act").[1] The parties' cross motions for summary judgment are pending, as is plaintiff's motion for remand. For the reasons discussed below, the court will grant plaintiff's motion for summary judgment (ECF No. 18) and motion for remand (ECF No. 13) in part, and will deny defendant's motion for summary judgment (ECF No. 19).

////

---

[1] It appears that plaintiff initially filed an application for Supplemental Security Income under Title XIV of the Act, but this was converted to a DIB application. See Administrative Record 106-17.

1

## PROCEDURAL BACKGROUND

Plaintiff filed an application for DIB on August 11, 2010, alleging disability beginning on March 26, 2007. Administrative Record ("AR") 106-17. Plaintiff's application was denied initially and again upon reconsideration. AR 48-52, 53-57. On August 22, 2011, a hearing was held before administrative law judge ("ALJ") Daniel G. Heely. AR 28-72. Plaintiff appeared with attorney representation at the hearing, at which she and a vocational expert testified. See id. In a decision dated September 14, 2011, the ALJ found plaintiff not disabled. AR 10-18. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.
>
> 2. The claimant has not engaged in substantial gainful activity since March 26, 2007, the alleged onset date.
>
> 3. The claimant has the following severe impairment: fibromyalgia.
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5. After careful consideration of the entire record, the undersigned finds the claimant has the residual functional capacity to perform a wide range of medium work as defined in 20 CFR 404.1567(c) and SSR 83-10 specifically as follows: the claimant can lift and/or carry 50 pounds occasionally and 25 pounds frequently, and she can sit, stand, and/or walk for six hours out of an eight-hour workday with normal breaks.
>
> 6. The claimant is capable of performing past relevant work as a clerk/typist and telephone clerk/receptionist. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.
>
> 7. The claimant has not been under a disability, as defined in the Social Security Act, from March 26, 2007, through the date of this decision.

AR 10-18.

Plaintiff requested review of the ALJ's decision by the Appeals Council, but the Council denied review on November 29, 2012, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. AR 1-3.

## FACTUAL BACKGROUND

Born on November 15, 1977, plaintiff was 29 years old on the alleged onset date of

disability and 33 years old at the time of the administrative hearing. Plaintiff has an associate's degree in business administration, AR 27, and last worked as an account clerk, a call center worker, and a data entry clerk, AR 41.

## LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). "It means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir.2006) (citation omitted).

Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec' y of Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir.1988); see also Jones v. Heckler, 760 F.2d 993, 995 (9th Cir.1985).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not

1 rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir.2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## ANALYSIS

Plaintiff seeks summary judgment on the grounds that: (1) the ALJ erred when excluding chronic fatigue syndrome as a severe impairment at the second step of the sequential evaluation process, (2) the ALJ improperly rejected her testimony regarding her subjective symptoms, (3) the ALJ erred in his treatment of the medical opinion evidence, and (4) her counsel in the underlying matter was ineffective.[2] The Commissioner argues that the ALJ's decision is supported by substantial evidence and is free from legal error.

A.   The ALJ's Step Two Determination

At step two of the sequential disability evaluation process, the ALJ must determine if an impairment is "severe." 20 C.F.R. § 404.1520. An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii), (c); see also Social Security Ruling ("SSR") 96–3p, 1996 WL 374181 *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b); SSR 85–28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual['] s ability to work." SSR 85–28, 1985 WL 56856 *3; see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988). Plaintiff has the burden of proving that her "impairments or their symptoms affect her ability to perform basic work activities." Edlund v. Massanari, 253 F.3d

---

[2] Plaintiff's motion for remand asserts substantially the same arguments as those raised in her motion for summary judgment.

4

1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998). The step two inquiry described above, however, is a de minimis screening device used to dispose of groundless claims. See Smolen, 80 F.3d at 1290.

At the second step of the sequential evaluation process, the ALJ found that plaintiff's fibromyalgia qualifies as a severe impairment. AR 12. Plaintiff contends the ALJ erred in failing to find that plaintiff's chronic fatigue syndrome also qualifies as a severe impairment. But assuming that this was error, the undersigned finds any error to be harmless. This is because the ALJ considered plaintiff's chronic fatigue at subsequent steps of the sequential evaluation process. See AR 13-14; Hubbard v. Astrue, 2010 WL 1041553, at *1 (9th Cir. 2010) (because claimant prevailed at step two and ALJ considered claimant's impairments later in sequential analysis, any error in omitting those impairments at step two was harmless) (citing Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) (ALJ's error in failing to list bursitis at step two harmless where ALJ's decision showed any limitations posed thereby were considered later in sequential evaluation process); Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005) (any error by ALJ in failing to consider plaintiff's obesity at step two harmless because ALJ did not err in evaluating plaintiff's impairments at later steps).

B.   Plaintiff's Subjective Testimony

   1.   Legal Standards

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Comm'r of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence

shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834.

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen, 80 F.3d at 1284. The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. See id.

2. Analysis

After extensively reviewing plaintiff's statements and testimony, see AR 14, the ALJ ultimately found her not entirely credible. The ALJ found that, although plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, her statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for three reasons: (1) her self-described activities are inconsistent with a disabling condition, (2) she made inconsistent statements about her symptoms, and (3) her allegations regarding the severity of her symptoms and limitations are greater than expected in light of the objective evidence. AR 14.

Turning first to the ALJ's reason that plaintiff's allegations regarding the severity of her symptoms are unsupported by objective evidence, the Ninth Circuit has noted that fibromyalgia is a definite but elusive affliction:

> "[F]ibromyalgia, previously called fibrositis, [is] a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue. [citations omitted] Common symptoms . . . include chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with this disease. [citations omitted] Fibromyalgia's cause is unknown, there is no cure, and it is poorly understood within much of the medical community. *The disease is diagnosed entirely on the basis of patients' reports of pain and other symptoms.* The American College of Rheumatology issued a set of agreed upon diagnostic criteria in 1990, but to date there are no laboratory tests to confirm the diagnosis. [citations omitted]"

Benecke v. Barnhart, 379 F.3d 587, 589 (9th Cir. 2004) (emphasis added). It was therefore error for the ALJ to cite to the lack of objective evidence when discounting plaintiff's credibility

1  because the nature of the disease eludes objective testing and is based entirely on a patient's
2  subjective reports.

3        But the court finds that the ALJ's other two reasons constitute clear and convincing
4  reasons for discounting plaintiff's credibility.  First, the ALJ noted that plaintiff's self-described
5  activities are inconsistent with a diagnosis of fibromyalgia.  Although it is true that activities that
6  are sporadic or punctuated with rest may be consistent with fibromyalgia because "disability
7  claimants should not be penalized for attempting to lead normal lives," Reddick, 157 F.3d at 722,
8  the nature and extent of plaintiff's activities in this case go beyond those that are sporadic or
9  punctuated.  SSR 12–2p, which provides guidance on how to evaluate fibromyalgia disability
10 claims, makes clear that daily activities are important in evaluating the severity of a claimant's
11 fibromyalgia impairment.  Here, the ALJ found that plaintiff reported, for example, playing
12 volleyball weekly and coaching her children's sports teams (for four to six hours per week).  The
13 ALJ reasonably found these activities inconsistent with plaintiff's testimony and claims of
14 limitations.[3]  These activities, even if they do not prove that plaintiff can work, do suggest that the
15 alleged severity of her limitations has been exaggerated.  Valentine v. Astrue, 574 F.3d 685, 693
16 (9th Cir. 2009).

17       Moreover, the court finds that the record supports the ALJ's finding that plaintiff made
18 inconsistent statements about her symptoms.  As the ALJ noted, plaintiff wrote in her September
19 2010 function report that she could pay attention, finish what she started, and follow instructions.
20 See AR 14, 152.  At the hearing, though, plaintiff stated that she had difficulty staying on task,
21 suggesting to the ALJ that she was exaggerating her symptoms.  Additionally, plaintiff testified
22 that she has difficulty sitting for more than 20 minutes before being forced to shift into non-sitting

---

[3] Plaintiff argues that the ALJ erred in considering her volleyball activities because she had not played that game in over a year as of the August 2011 administrative hearing. See Pl.'s Motion Summ. J. at 4 ¶ 3. But plaintiff's September 2010 function report noted that she plays volleyball weekly, AR 151, and medical notes prepared by plaintiff's treating physician reflect that plaintiff was playing volleyball as late as January 2011, AR 249. In any event, even if true, plaintiff did not share this information with the ALJ, and the ALJ did not err in interpreting the record that was before him.

7

1   positions, see AR 37, but she also testified that she drives 30 minutes daily to visit her children[4],

2   AR 33, and that she took a July 2010 road trip that totaled 8 days to and from Minnesota, AR 35-

3   36.  It follows that the ALJ may permissibly infer from plaintiff's inconsistent statements that

4   plaintiff is not fully credible about other issues, such as the severity of her symptoms.  See

5   Moncada v. Chater, 60 F.3d 521, 524 (9th Cir. 1995) (ALJ properly discredited claimant's

6   testimony where claimant's testimony about daily living activities was much more limited than

7   those reported prior to testimony).

8       The court therefore finds no error because the ALJ provided clear and convincing reasons

9   for finding plaintiff not entirely credible.

10  B.     Opinion Evidence

11         1.     Legal Standards

12      In the Ninth Circuit, courts "distinguish among the opinions of three types of physicians:

13  (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the

14  claimant (examining physicians); and (3) those who neither examine nor treat the claimant

15  (nonexamining physicians)."  Lester, 81 F.3d at 830.  Generally, more weight should be given to

16  a treating physician's opinion than to those who do not treat the claimant.  Id.  A treating

17  physician's opinion that is given controlling weight "must be adopted."  See Social Security

18  Ruling ("SSR") 99–2p ("Giving Controlling Weight to Treating Source Medical Opinions," at ¶

19  6).[5]  To accord a treating physician's opinion controlling weight, the opinion must be (1) "well-

20  supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "'not

21  inconsistent' with the other substantial evidence in the case record."  See Orn v. Astrue, 495 F.3d

22  625, 631 (9th Cir. 2007).  "Not inconsistent" means that "no other substantial evidence in the case

23  record . . . contradicts or conflicts with the opinion"; "substantial evidence" means "more than a

---

[4] Plaintiff testified that she travels from Modesto, where she lives, to Hilmar, where her children live with her ex-husband.  AR 33.  The distance between these two towns is 19.6 miles, suggesting that plaintiff in fact travels more than 30 minutes each day to visit her children.

[5] "SSRs do not carry the 'force of law,' but they are binding on ALJs nonetheless."  Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1224 (9th Cir. 2009).  The Ninth Circuit gives them deference so long as they do not produce "a result inconsistent with the statute and regulations." Bunnell v. Sullivan, 947 F.2d 341, 346 n.3 (9th Cir. 1991).

mere scintilla" such that a "reasonable mind would accept as adequate to support a conclusion." SSR 96–7p (Explanation of Terms).

  2.   Dr. Darrell Hansen, Treating Physician

     a.   Relevant Background

        i.   The Medical Records

As early as April 2007, Dr. Darrell Hansen, plaintiff's doctor since birth, AR 39, considered the possibility that plaintiff may be suffering from chronic fatigue syndrome and fibromyalgia based on plaintiff's complaints of fatigue and based on the presence of multiple tender points. AR 198. From 2007 through 2011, plaintiff complained to Dr. Hansen of pain, 207 (December 2007), AR 249 (January 2011); poor and/or excessive sleep, AR 202 (June 2007), 241 (July 2008); low energy and/or fatigue, AR 242 (August 2008), 248 (October 2010); anger, AR 243 (October 2008); and difficulty with prolonged sitting, AR 250 (February 2011).

Dr. Hansen's medical notes, which also refer to plaintiff's fibromyalgia, list the various medications prescribed to treat plaintiff's condition, including Lyrica, Cymbalta, Amitriptyline, and Effexor. See AR 241-44. Plaintiff had also been prescribed Hydrocodone for pain, though she uses it only after a particularly physically active day and does so sparingly because she understands that it compounds the drowsiness that she experiences from her chronic fatigue. AR 248 (October 2010). The medications appear to have been somewhat helpful. AR 248 (October 2010), 249 (January 2011).

As to her physical activity, Dr. Hansen wrote that, with plaintiff's chronic fatigue and fibromyalgia, it was important for her to maintain a regular activity. AR 203, 245, 250. His notes indicate that plaintiff was participating in moderate exercise and that she regularly coached her daughter's basketball team, AR 243 (October 2008); that she coached her child's soccer team three days per week, played volleyball an additional day each week, and walked from home to the park, AR 248 (October 2010); and that she was active in coaching and playing volleyball, AR 249 (January 2011).

        ii.   Functional Assessment

On March 21, 2011, Dr. Hansen completed a Medical Report of Physical and Mental

9

Work-Related Impairments in supports of plaintiff's applying for DIB. AR 234-38. Dr. Hansen first noted that plaintiff's medications have lessened her symptoms, though plaintiff remains unable to resume activities requiring greater than 30-60 minutes of physical or mentally challenging tasks. Then, based on his medical notes and plaintiff's self-reports, Dr. Hansen found that plaintiff can frequently lift and carry up to 20 pounds, but can only occasionally lift and carry greater than 20 pounds. He further found that plaintiff can sit for four hours in an 8-hour day and can stand and/or walk for only one hour in an 8-hour day. As for postural activities, he found that plaintiff can frequently balance and can occasionally climb, stoop, crouch, kneel and crawl.

Regarding plaintiff's mental limitations, he noted that plaintiff has a good ability to deal with work stress and a fair ability to maintain concentration / attention. He otherwise found no restrictions on plaintiff's ability to follow work rules, relate to co-workers, deal with the public, use judgment, interact with supervisors, and function independently. He also noted that while plaintiff had a good ability to understand, remember and carry out complex job instructions, she had an unlimited ability to understand, remember and carry out both detailed, but not complex job instructions, and simple instructions. Lastly, he noted that she has an unlimited ability to maintain personal appearance, but only a good ability to behave in an emotionally stable manner, to relate predictably in social situations, and to demonstrate reliability.

b.   Analysis

As a treating physician, Dr. Hansen's opinion is ordinarily accorded controlling weight. However, the ALJ refused to grant the opinion such weight because (1) Dr. Hansen did not document positive objective clinical or diagnostic findings to support his functional assessment and (2) Dr. Hansen's findings were based on plaintiff's subjective complaints, which suggested to the ALJ that Dr. Hansen "provided these off-work statements primarily as an accommodation to the [plaintiff]." AR 15.

The court finds that the ALJ erred in discounting Dr. Hansen's opinion. First, and as noted supra, fibromyalgia is a disease "diagnosed entirely on the basis of [the] patients' reports of pain and other symptoms." Benecke, 379 F.3d at 590. The ALJ thus could not expect to find objective evidence of fibromyalgia or of the limitations it imposed. Because "fibromyalgia's

cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia." Jordan v. Northrop Grumman Corp. Welfare Plan, 370 F.3d 869, 872 (9th Cir. 2004). Accordingly, a patient's subjective report of pain and symptoms is paramount for diagnosing fibromyalgia, and it is error for an ALJ to require objective evidence for a disease that eludes such measurement. Benecke, 379 F.3d at 590, 594.

Moreover, although the ALJ asserted that Dr. Hansen's functional assessment was provided "primarily as an accommodation" to plaintiff, the ALJ points to no evidence of actual impropriety on the part of Dr. Hansen. See Lester, 81 F.3d at 832 (quoting Ratto v. Sec'y, Dept. of Health and Human Servs., 839 F. Supp. 1415, 1426 (D. Or. 1993)) ("The Secretary may not assume that doctors routinely lie in order to help their patients collect disability benefits."); see also Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996) (citing Saelee v. Chater, 94 F.3d 520, 523 (9th Cir. 1996)) (the source of report is a factor that justifies rejection only if there is evidence of actual impropriety or no medical basis for opinion). In this case, the record contains no evidence that Dr. Hansen embellished his assessments of plaintiff's limitations to assist her with her benefits claim. See Reddick, 157 F.3d at 725-26 (ALJ erred in assuming that the treating physician's opinion was less credible because his job was to be supportive of the patient). Thus, the ALJ's rejection of Dr. Hansen's opinion on the basis that his opinion was based upon sympathy instead of sound medical judgment was improper. This matter will therefore be remanded for reconsideration of Dr. Hansen's opinion.

3.      Other Medical Opinions

Because the ALJ's rejection of plaintiff's treating physician's opinion was based on legal error, the court declines to reach plaintiff's additional arguments concerning the ALJ's treatment of the opinions of non-examining State agency physical medical consultant, Dr. G. Bugg, and State agency internal medicine examining physician, Dr. Roger Wagner. AR 214-18 (report of Dr. Wagner), 227-28 (report of Dr. Bugg). The court notes only that the weight given to each of these opinions (the ALJ gave Dr. Bugg's opinion significant weight, AR 15-16, and gave Dr. Wagner's opinion reduced weight) was based in large part on the consistency of their opinions

with the objective medical evidence (or lack thereof). AR 16. As noted, however, the ALJ, erred in requiring objective medical evidence in this fibromyalgia case, and it is evident that this error permeated his consideration of all medical opinions. Accordingly, on remand, the ALJ shall reconsider the opinions of all medical experts in light of the standard for adjudicating disability claims based on fibromyalgia and chronic fatigue syndrome.

C.      Ineffective Assistance of Counsel

Lastly, plaintiff argues that her counsel in the underlying proceedings was ineffective. However, there is no Sixth Amendment right to counsel in the social security context. Thus, ineffective assistance of counsel is not a claim providing a basis for exercising jurisdiction in this case. See Holland v. Heckler, 764 F.2d 1560, 1562 (11th Cir. 1985) (a claimant has "no constitutional right to counsel at a disability benefits hearing"); Yoorhes v. Astrue, 2009 WL 1955804, at *2 n.3 (N.D. Cal. July 2, 2009) (quoting Holland); see also 4 Soc. Sec. Law & Prac. § 46:3 ("A claim of ineffective assistance of counsel during administrative proceedings may not provide a basis for reversing the SSA's denial of benefits, because, given the nonadversarial nature of the administrative process, competent legal representation of a claimant during the process is not a prerequisite to the issuance of a valid administrative decision.").

D.      Remand is Required

The ALJ erred in his consideration of the medical opinion evidence. Generally, "[w]here the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, [the Court credits] that opinion as 'a matter of law.'" Lester, 81 F.3d at 830–34 (finding that, if doctors' opinions and plaintiff's testimony were credited as true, plaintiff's condition met a listing (quoting Hammock v. Bowen, 879 F.2d 498, 502 (9th Cir. 1989))). Crediting an opinion as a matter of law is appropriate when, taking that opinion as true, the evidence supports a finding of disability. See Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996).

Courts retain flexibility, however, in applying this crediting-as-true theory. Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003) (remanding for further determinations where there were insufficient findings as to whether plaintiff's testimony should be credited as true). "In

1    some cases, automatic reversal would bestow a benefits windfall upon an undeserving, able
2    claimant." Barbato v. Comm'r of Soc. Sec. Admin., 923 F. Supp. 1273, 1278 (C.D. Cal. 1996)
3    (remanding for further proceedings where the ALJ made a good-faith error in that some of his
4    stated reasons for rejecting a physician's opinion were legally insufficient).

5        Here, the ALJ erred because the stated reasons for rejecting the aforementioned opinions
6    are legally insufficient. "Such good faith errors inevitably will occur.  Reasonable judicial minds
7    sometimes will disagree regarding proper application of the rather imprecise standard of 'specific,
8    legitimate' reasons." Barbato, 923 F. Supp. at 1278. "[U]nder the rule in Lester, the [medical]
9    opinion will trigger benefits whenever the ALJ's previously stated reasons for rejecting the
10   opinion fall short of the ill-defined 'specific, legitimate' standard." Id. (footnote omitted). "A
11   reviewing court should have discretion to avoid this inequitable result by remanding the case for
12   further administrative proceedings.  Remand necessitates delay, but the cost of this delay should
13   be balanced against the risk of an erroneous determination." Id.; see also McAllister v. Sullivan,
14   888 F.2d 599, 603 (9th Cir. 1989) (remanding for further proceedings because Secretary of Health
15   and Human Services was in better position than court to point to evidence in record to provide
16   specific, legitimate reasons to disregard treating physician's opinion).  Accordingly, the court
17   exercises its discretion to remand this case to the Commissioner for further proceedings.  See
18   McAllister, 888 F.2d at 603 (holding that court may remand to allow ALJ to provide the requisite
19   specific and legitimate reasons for disregarding medical opinions).

## CONCLUSION

Accordingly, for the reasons stated above, IT IS HEREBY ORDERED that:

1.   Plaintiff's motion for summary judgment (ECF No. 18) and motion for voluntary remand (ECF No. 13) are granted in part;

2.   The Commissioner's cross-motion for summary judgment (ECF No. 19) is denied; and

////

////

////

3. This matter is remanded for further proceedings consistent with this order.

DATED: April 1, 2014

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE